FILED

9͟ SEP 27 AM 9: 1͟͟

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 27 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KAY SHELL, | }<br>} |
| Plaintiff, | }<br>} |
| v. | } CIVIL ACTION NO.<br>} |
| | } 98-AR-1017-M |
| JEFFERSON COUNTY BOARD OF<br>EDUCATION, | }<br>}<br>} |
| Defendant. | } |

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendant, Jefferson County Board of Education ("JCBE"). The motion seeks judgment as a matter of law on claimed violations of 42 U.S.C.§§ 12101 *et seq.*, Americans with Disabilities Act ("ADA"). For the reasons set forth herein, the motion is due to be granted. Plaintiff, Kay Shell ("Shell"), has introduced a motion to withdraw her state law claims. This motion is due to be granted.

### Pertinent Facts

Shell began her employment with JCBE in 1978. In August 1995, she began working at Pittman Middle School ("Pittman") as a seventh grade Social Studies teacher. David Earwood was the principal at



Pittman when Shell first started working there.  Joseph Redcross became the principal in 1996.

Shell alleges that she began to have respiratory problems shortly after she began working at Pittman, and that these problems gradually got worse over time.  Shell testified that she had never had any other respiratory problems before working at Pittman.

After a fairly intensive course of treatment with two doctors over many months, including sinus surgery, Shell first began to suspect a connection between her health problems and the work environment at Pittman.  She asked her treating physician, Dr. Robertson, to write Principal Redcross at Pittman to convey plaintiff's concerns.  Dr. Robertson wrote that possible environmental irritants and allergens may play a role in Shell's "symptomatology," but that they were "obviously difficult to identify" or to "demonstrate a causal relationship."

After receiving this letter, Redcross asked the JCBE maintenance department to inspect the building and test the air for contaminants.  Redcross testified that no significant results were found from this test.  Next, on Redcross' request, in November, 1996, and again in January of 1997, an environmental investigation was performed by the Jefferson County Department of Health.  No regulatory violations were uncovered, although the Health

2

Department did note that the building where Shell worked suffered from poor air circulation had problems with ventilation.

On March 26, 1997, Shell submitted a formal request for transfer. She cited as her reason for requesting transfer "to return to a high school environment." She was given interviews at the two schools she requested. There was no opening at one, and the half day schedule at the other conflicted with the Pittman schedule so she was unable to split the schedule. Shell completed the 1996-1997 school year at Pittman.

Shell returned for the beginning of the 1997-1998 school year but was absent after August 26, 1997. Although her physician, Dr. Robertson, had previously noted the "obvious" difficulty of establishing a causal link between Shell's symptoms and the Pittman School environment, he now made that link and directed Shell not to return to work at Pittman. Dr. Robertson wrote to the school Board on August 29 and September 11, 1997, and explained that he attributed her symptomatology and illness to her exposure to the building where she worked. He further explained that Shell was allergic to several species of weeds, trees, cats, and an ammonium salt used in washing powders, dyes, and cement for iron pipes.

In response to Dr. Robertson's letters, on September 15, Ellen

Harris[1] wrote to Shell, enclosing an application for medical leave under the Family Medical Leave Act, and advising her that she (Harris) was working on all options regarding a transfer to another facility.

Harris arranged for an interview for Shell at Bottenfield Junior High on approximately September 22, 1997. During the course of that interview Shell explained to Bottenfield School Principal Gary Evans ("Evans") that she was seeking a transfer to Bottenfield because there was something in the air at Pittman that she was allergic to and that she could not breathe. Evans asked her how she knew she would not get sick at Bottenfield, and she replied "I don't have an answer to that question."

Shell did not get the position at Bottenfield. Principal Evans later explained that he had interviewed Shell at the request of Harris, but had already decided to recommend a previous applicant for the position.

On approximately September 24, 1997, Shell's attorney wrote to JCBE's attorney requesting that Shell be returned to work as soon as possible and that Shell had been "cleared to work at any facility besides Pittman." On October 2, 1997, Shell filed an EEOC

---

[1]Board Director of Certificated Personnel

4

charge, mentioning the ADA for the first time, asserting that JCBE had "refused to transfer her to a facility in compliance with her doctor's request."

On October 8, 1997, the Jefferson County Department of Health issued a report describing the results of an on-site inspection at Pittman. The report concluded, in pertinent part: "The attack rate for illness . . . is not consistent with that which would be expected for an illness resulting from environmental exposure. . . and that [t]here is not a risk to the population working or attending school at Pittman." The report continued by stating that sometimes specific individuals develop extreme sensitivity to an environment not ordinarily dangerous, and that the best way to test that theory would be to transfer the complaining employees to another facility and see if their symptoms improved.

On October 27, 1997, Shell's third and current law firm advised of its representation of Shell "with her claims under the Americans with Disabilities Act." More specific requests and complaints were made in a letter from this law firm on November 12, 1997. In response to this letter, on November 20, 1997, JCBE offered to create for Shell a previously unbudgeted position at Gilmore-Bell High School. Shell accepted that position, and then later moved into a full time English teacher's position at Gilmore-

5

Bell when one opened up. Shell currently remains employed at Gilmore-Bell.

### Discussion

A. ADA Claim

The ADA prohibits unlawful discrimination in employment based on disability. 42 U.S.C. § 12112(a). Shell can establish a *prima facie* case under the ADA by showing (1) she has a disability; (2) she is a qualified individual; and (3) she was discriminated against because of her disability. *Swain v. Hillsborough County School Board,* 146 F.3d 855, 857 (11th Cir. 1998).

With respect to element number one, the ADA defines "disability" as (a) a physical or mental impairment that substantially limits one or more major life activities; or (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. 12102(2). Shell claims both (a) that she has a physical disability that substantially limits the major life activity of breathing; and (c) that she was "regarded as" disabled.

Before discussing Shell's claim that she has a disability, the court must first decide which version of the claim to discuss. When Shell first brought her claim in April of 1998, her theory was that there were certain "leaks and irritants" in the air at Pittman

6

Middle School when she was teaching there that caused her illness. She claimed that JCBE violated her rights under the ADA by failing to accommodate her by transferring her to another school. A doctor's report provided to JCBE on behalf of Shell in August of 1997 indicated that Shell's respiratory problems were caused or aggravated by contaminants in the air at Pittman, and that she should not return to work at Pittman because of serious risks to her health in that environment. Shell's second attorney informed JCBE that Shell had been "cleared to work at any facility other than Pittman." Shell points out at paragraph 42 of Count I of her complaint that her "health problems improved when she was away from the environmental contaminants at Pittman."

In July of 1999 Shell's claims and theories changed. This court granted leave to Shell at that time to file a supplemental brief in light of the three significant Supreme Court cases relating to the ADA that were decided in June of 1999.[2] In this supplemental brief, Shell now claims that even on maximum medication doses her medical condition has not been corrected and she continues to suffer significantly. She further claims that she will have this condition for the rest of her life, and that she

---

[2] *Sutton v. United Airlines, Inc.*, 119 S.Ct. 2162 (1999) ; *Murphy v. United Parcel Service, Inc.*, 119 S.Ct. 2133 (1999); *Albertson , Inc. V. Kirkingburg*, 119 S.Ct. 2162 (1999).

runs the risk of debilitating life-threatening respiratory breakdown every time she is exposed to sufficient quantities of ammonium chloride in any environment, not only at Pittman.

The court's reason for granting Shell's motion to file the supplemental brief was to allow her every opportunity to state her claim in light of any relevant changes in the <u>law</u>; the purpose was not to allow her to make new arguments in light of a changing version of her <u>facts</u>. The court cannot allow Shell to demand that JCBE pay her money damages for failing to accommodate her based on a condition she herself never claimed she had until years after the alleged "discrimination." Consequently, the court will examine Shell's claims as originally presented.

To establish a *prima facie* case and survive summary judgment on the question of whether she has a disability, Shell must present sufficient evidence to create a genuine issue of material fact as to whether her physical impairments substantially limit her ability to partake in a major life activity. *Swain v. Hillsborough County School Bd.*, 146 F.3d 855, 857 (11th Cir.1998). The EEOC defines major life activity as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1996).

With respect to whether the life activity is "substantially limited," the most recent Supreme Court decisions hold that any substantial limitation of a major life activity must be viewed with reference to the mitigating measures employed. "A person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." *Sutton v. United Airlines, Inc.*, 119 S.Ct. 2139, 2146-47 (1999).

Here, Shell's breathing problems "improved when she was away from the environmental contaminants at Pittman." Thus, because a position was made available to Shell at another school by JCBE, mitigating measures apparently were successful.

Even in her most recent version of her claim Shell only alleges that she has ailments with which she "runs the risk" of debilitating symptoms "if" she is ever exposed to "sufficient quantities" of ammonium chloride. But this is not enough. The *Sutton* Court held that "[b]ecause the phrase 'substantially limits' appears in the Act in the present indicative verb form, we think the language is properly read as requiring that a person be presently-not potentially or hypothetically- substantially limited in order to demonstrate a disability." *Id*. An impairment is not

9

shown where it merely "'might,' 'could,' or 'would'" be substantially limiting, but only where it "presently 'substantially limits' a major life activity." *Id*. Thus, because Shell, even under her most recent claim, merely "runs the risk" of severe respiratory problems, she cannot show a disability that substantially limits the major life activity of breathing, and summary judgment on this issue is due to be granted.

Next, Shell argues that she still makes her *prima facie* case demonstrating that she has a disability because she was "regarded as" disabled. The EEOC defines three circumstances that would satisfy a plaintiff's claim for relief for discrimination because the defendants "regarded" him or her as having such an impairment:

These are that the plaintiff

(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does;

(2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or

(3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA. 29 C.F.R. § 1630.2(l ).

The court does not understand Shell's argument here because, while Shell cites these three provisions above in her brief, she claims that she was "regarded as" disabled by JCBE, even though none of these provisions applies to her factual situation in any way. First, Shell is certainly not arguing that she has an impairment that does **not** substantially limit a major life activity, but is treated by an employer as though she does. *Id*. After all, her whole premise is that she **does, in fact,** have a substantially limiting impairment. Next, Shell cannot be arguing that she is only impaired because of others' attitudes towards the impairment. *Id*. Again, her premise is based on the fact that she **has an actual impairment**, not one that **only** impairs her because of others' attitudes. And third, Shell certainly cannot be arguing that she <u>has no impairment whatsoever</u>, but is treated by an employer as having a disability as recognized by the ADA. *Id*. (Emphasis added.)

It appears that Shell's "regarded as" argument is based on the incident when Gary Evans, Principal at Bottenfield, asked her how she knew she would not get sick at his school also. Shell seems to be arguing a dictionary lay definition of the phrase "regarded as" in that it appears that Principal Evans may have "regarded" her as having a respiratory ailment. But as the Eleventh Circuit has

11

explained, "Where a "defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact, a finding that plaintiff was regarded as disabled and, therefore, is entitled to the protections of the ADA, is inappropriate." *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999)(internal citations and quotations omitted). The "regarded as" provision is "intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities." *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 913. (11th Cir 1996).

Here, Evans "regarded" Shell as having a respiratory ailment because Shell told him she had one. It is difficult, therefore, to see how Evans statement "evinces an erroneous or archaic attitude that would disadvantage someone wrongly suspected of being disabled." *Id*. In the context of the ADA, the term "regarded as" disabled is a term of art with a specific meaning entirely separate from the ordinary dictionary lay definition of the term, as counsel for Shell certainly must be aware. The court can find no basis for applying the ADA definitions of "regarded as" disabled to the facts in this case.

Because Shell cannot show that she is either "disabled" or "regarded as" disabled, she cannot make her *prima facie* case of discrimination under the ADA. Accordingly, JCBE is entitled to judgment as a matter of law and its motion for summary judgment is due to be granted.

B. Reasonable Accommodation

Assuming, *arguendo*, that Shell had been able to show that she is disabled within the meaning of the ADA, Shell next argues that JCBE did not provide reasonable accommodations in that it

(1) failed to provide her with preferential treatment with respect to a transfer to the vacancy at Bottenfield;

(2) failed to allow her catastrophic injury leave; and

(3) failed to allow her on-the-job injury pay.

With respect to the first allegation, in March 1997, Shell put in a request for a transfer so she could "return to a high school environment."[3]  No mention at all was made regarding a medical problem.  Shell claims that "this request was designed to enable [her] to avoid the environmental and chemical irritants that existed at Pittman Middle School." Although that may have been her

---

[3] Shell was given interviews at the two high schools she requested. There were no openings at the first one. At the other, only a part time position was available that conflicted with the Pittman schedule, thereby precluding the possibility of splitting duties between the two schools.

13

"design," she failed to so inform JCBE. It is the responsibility of the individual claiming disability to inform the employer that an accommodation is needed. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1394 (11th Cir. 1999). Once an accommodation is requested, the employer then is required to make a "reasonable" accommodation if it will allow the employee to continue the to perform the essential functions of the job and does not create an undue burden. *Stewart*, 117 F.3d at 1285. The employee is not entitled to demand the accommodation of her choice. *Id*.

As outlined in the facts above, JCBE was aware of a medical need to transfer Shell on August 29, 1997. Within three months it had created for her a previously unbudgeted full time teaching position at Gilmore-Bell. Based on these of events, the court sees no evidence of failure to accommodate. Assuming, arguendo, that any accommodation at all was required, this court finds that the employment opportunity created for Shell at Gilmore-Bell was a reasonable accommodation.

Next, Shell argues that JCBE failed to accommodate her by refusing to allow her catastrophic injury pay and on-the-job injury pay. Shell has moved the court to withdraw any breach of contract claims in this regard, and appears to be arguing that she should

have received these benefits as an "accommodation," notwithstanding the fact that she is not due the benefits contractually.

Catastrophic injury pay is available to those who meet certain statutory requirements. Primarily, one is required to be a member of the "sick bank" by depositing five days of ones own accrued sick leave into the bank. Membership in the sick bank is voluntary. Shell did not join. Shell's argument that JCBE failed to accommodate her appears to come down to her allegation that JCBE allowed another employee, Nana Ford ("Ford"), to receive the catastrophic injury pay benefit even though Ford was not a member of the "sick bank." Even if JCBE exceeded its contractual obligations to help Ford, it would have no obligation to do so on behalf of Shell as an accommodation under the ADA. ([T]he fact that certain accommodations may have been offered by the County to some employees as a matter of good faith does not mean that they must be extended to Myers as a matter of law.) *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995); *see also Cheatwood v. Roanoke Industries*, 891 F.Supp. 1528, 1539 (N.D. Ala 1995).

Notwithstanding the above, however, Shell is factually mistaken with respect to whether Ford was a member of the sick bank. Ford received the catastrophic injury pay benefit only and

directly because she was a member of the bank.

Next, Shell claims that JCBE failed to accommodate her by refusing her request to be granted on-the-job injury pay.  Under the statute, an "on-the-job injury" is defined as "any accident or injury to the employee occurring during the performance of duties . . . which prevents the employee from working or returning to his or her job."  Ala. Code § 16-1-18.1(d)(1).  There is no mention in the statute of an "illness" caused by the job.  There is no mention of any gradually progressing malady.  In fact, the statute requires that the injury be reported within twenty-four hours as a prerequisite for receiving on-the-job injury benefits.  Even if Shell somehow could have reported the onset of her alleged illness within this twenty-four hour time frame, she did not do so.

Because Shell is unable to show that she has a disability under the ADA, the court is not required to consider her "reasonable accommodation" claims.  Having now considered those claims, however, the court concludes that Shell has failed to introduce any evidence creating a genuine issue of material fact with respect to JCBE's alleged failure to accommodate, and summary judgment on that issue is due to be granted.

C. Retaliation

To establish a prima facie case of retaliation under the ADA,

16

Shell must show (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Stewart*, 117 F.3d at 1287.

Shell claims that she engaged in statutorily protected expression when she "complained to the Board that the Board was violating the ADA in refusing to accommodate her illness by transferring her to another school." The adverse employment actions she claims include (a) the Board's refusal to hire her at Bottenfield; (b) denial of catastrophic leave; and (c) failure to respond to her request for paid leave (presumably based on her "on-the-job injury" claim).

Shell complained about alleged ADA violations for the first time when she filed her charge of employment discrimination with the EEOC. JCBE received notice of this charge for the first time somewhere in the second half of October, 1997. Shell interviewed for the position at Bottenfield in September of 1997. Thus, her failure to receive the job at Bottenfield could not have been in retaliation for her complaints, because the complaints occurred second in time.

Even if Shell can argue that JCBE was "constructively" on notice of protected expression under the ADA when Shell sought a

17

transfer for medical reasons at the end of August, 1997, JCBE created a position for her at Gilmore-Bell High School within three months of that request. Shell's failure to receive the transfer of her first choice cannot be termed "retaliation." If anything, the record in this case indicates sincere concern for Shell's well being on the part of JCBE and substantial efforts to find solutions to her problems.

With respect to any claims of retaliation relating to catastrophic leave and on-the-job injury pay, the court has already found that JCBE was under no contractual obligation to grant those benefits to Shell. JCBE's refusal to exceed its contractual obligations to Shell will not be deemed "retaliation."

This court sympathizes with Shell and believes that she has experienced serious respiratory ailments involving frightening shortness of breath, surgery, and great discomfort. The court even assumes, *arguendo*, that it is the "leaks and irritants in the air" at Pittman that caused these ailments. The court can understand that a lay person, untrained in the law, might believe under this set of facts that there must be a remedy out there for her somewhere. Unfortunately, that remedy cannot be found within the confined boundaries of the ADA.

### Conclusion

Based on the discussion above, this court finds that Shell has introduced no evidence creating a genuine issue of material fact with respect to whether she was discriminated against based on disability under the ADA. Accordingly, judgment as a matter of law for JCBE is due to be granted. An appropriate order will be separately entered.

DONE this 27th day of September, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE